RECEIVED
IN ALEXANDRIA, LA
AUG 10 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

CARL L. HARDY, SR.
           Appellant         CIVIL ACTION NO. 07-2241
VERSUS

MICHAEL J. ASTRUE,         JUDGE JAMES T. TRIMBLE, JR.
COMMISSIONER OF SOCIAL SECURITY   MAGISTRATE JUDGE JAMES D. KIRK
           Appellee

## REPORT AND RECOMMENDATION

Carl L. Hardy, Sr. ("Hardy") filed an application for Disability Insurance Benefits ("DIB") on or about October 25, 2004 alleging a disability onset date of April 1, 2004 (R. 94-98). The application was denied February 25, 2005 and Hardy filed a request for hearing on April 20, 2005 (R. 73-78). A hearing was held by Administrative Law Judge ("ALJ") Michael McShane who issued an unfavorable decision. (R. 39-46). Hardy appealed the decision and the Appeals Council remanded the matter for further proceedings. (R. 83-85). A second hearing was held before ALJ Richard L. Abrams on June 22, 2007 and a second unfavorable decision was issued on September 13, 2007 (R. 12-19).

To qualify for DIB, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous

period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

Hardy filed for disability benefits alleging a disability onset date of June 1, 2004 due to gallbladder surgery, high cholesterol and depression (R. 302). Hardy underwent gallbladder surgery in June of 2004 and a follow up surgery in January 2005 to address complications from scar tissue (R. 312-314, 378-379).

At the time of the first hearing, Hardy testified that he was previously employed as a plant operator but was unable to return to that job due to the chronic abdominal pain he experienced as a result of the gallbladder surgery (R. 315). He advised that he saw several doctors, including a psychiatrist, about once a month regarding this pain and the TENS unit he wore "help[ed] the pain a lot" (R. 323, 334). He was limited to sitting thirty or forty minutes at a time, walking thirty of forty feet as tolerated and standing thirty minutes. He could not bend but he could squat with some pain. He further advised he could lift ten to fifteen pounds and his fine manipulation skills were fine. (R. 323-324).

He advised that his depression medication seemed to help though it and Hydrocodone made him sleepy (R. 335). Therefore, he

would naps two to three times a day. Hardy also advised that he attended church most Sundays and drove. Yet, he had to rely upon his daughter and nephew to perform household chores and was no able to go fishing or play basketball with his grandchildren. (R. 331-336).

At the time of the second hearing, Hardy was fifty (50) years old. He advised that he continued to experience pain in the right side of his abdomen, his lower back and his legs (R. 379). Though the pain was reduced when he took medication, such as morphine, it was only eliminated (and only temporarily) when he underwent steroid injections in 2007 (R. 381, 392). Hardy further advised that it is this pain which prevented him from returning to work.

Hardy continued to experience limitations due to the pain. While he was able to take the trash out if it isn't too heavy, go to the grocery store on occasion, drive for a few hours and babysit his granddaughter(who was six years old at the time of the hearing), he continued to rely upon his daughter to mop and sweep. Additionally, he was limited to driving two to three hours at a time, sitting two hours a day, walking 200 yards, standing fifteen to twenty minutes and lifting ten pounds (though not over his head). However, he could bend to pick up anything that fell. Hardy testified that continued to nap several times a day for an hour or two as his medications, morphine and Tegretol, caused drowsiness (R. 383-389).

3

## Issues

In his brief, Hardy raised the following issues:

(1) Substantial evidence does not support the Commissioner's residual functional capacity assessment; and

(2) Proper weight was not given to the opinions of the claimants treating physicians.

## Discussion

The ALJ has the responsibility for deciding a claimant's residual functional capacity ("RFC"). 20 C.F.R. §404.1546. The ALJ must perform a function by function assessment of the claimant's ability to engage in work-related activities when making his RFC determination. SSR 96-8p. When making the RFC determination, and ALJ must consider objective medical facts, diagnoses and medical opinion based on such facts as well as subjective evidence of pain or disability testified to by the claimant or others. 20 C.F.R. §404.1545(a). Moreover, the ALJ must specify the evidentiary basis for his RFC determination. SSR 96-8p; Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment based upon all of the relevant evidence of the work a claimant can perform despite his limitations. 20 C.F.R. §416.945. Although that burden of proof in a disability case is on the claimant, that burden shifts to the Commissioner to show that the claimant is able to perform some

4

other kind of substantial work available in the national economy. Herron v. Bowen, 788 F.2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. See, Rivera-Figueroa v. Secretary of Health and Human Services, 858 F.2d 48, 51 (1st Cir. 1988); Soth v. Shalala, 827 F.Supp. 1415, 1417 (S.D. Iowa 1993); Santiago-Santiago v. Secretary of Health and Human Services, 756 F.Supp. 74 (D. Puerto Rico 1991). Also, Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

In Myers v. Apfel, 238 F.3d at 621, the Fifth Circuit stated that it had long held that ordinarily the opinions, diagnoses and medical evidence of a treating physician familiar with the claimant's injuries, treatments and responses should be accorded considerable weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1995) (per curium), citing 20 C.F.R. §404.1527(d)(2). The opinion of a specialist is generally accorded greater weight than that of a non-specialist. Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000).

While the opinions and diagnoses of the claimant's treating

5

physician should be given considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. Newton, 209 F.3d at 453; Martinez, 64 F.3d at 176. When "good cause" is shown, the ALJ may give less weight, little weight or even no weight to a physician's testimony. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). The good cause exceptions include statements that are brief and conclusory, statements not supported by medically acceptable clinical, laboratory or diagnostic techniques or statements otherwise unsupported by the evidence. Id.

Hardy argues that the ALJ failed to accord proper weight to the opinions expressed by his treating physicians, Dr. Giray and Dr. Primeaux, and that the ALJ's RFC is not supported by these doctors' opinions. Hardy further contends ALJ failed to comply with the remand order of the Appeals Council in that he did not comply with 20 C.F.R. §404.1529(c), §404.1512(e), §404.1512(f) and §404.1527(d)(2).

Contrary to Hardy's assertion, the ALJ did evaluate the matter in light of the requirements set forth in 20 C.F.R. §404.1529 and 20 C.F.R. §404.1527.[1]

---

[1] Hardy also argues the ALJ failed to comply the Order of the Appeals Council because he did not recontact medical sources or obtain a consultive examination pursuant to 20 C.F.R.

The ALJ stated:

> In making this finding the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(R. 15).

The Fifth Circuit has held that, an analysis under 20 C.F.R. §404.1527 is required when the ALJ rejects the treating physicians opinion for that of a non-examining physician and the record does not contain competing first-hand medical evidence. Newton, 209 F.3d at 453, 457-458. In the instant case, the ALJ did not reject the treating physician's opinion for that of a non-examining physician. Rather, he evaluated the competing first-hand medical evidence provided by Hardy's other treating physicians as well as other medical evidence in the record and determined that the clinical findings did not support the statements made by treating physicians upon whom Hardy relies.

---

§404.1512. Hardy provides no reason why this should have been done other than his contention the Order requires such. Further, he fails to advise how this perceived error was prejudicial. In reading the Order regarding recontacting medical sources, it states that this "may" be done "as appropriate". Further, §404.1512(f) states that a consultative examination will be called "if needed".
 The undersigned finds and Hardy points to no deficiencies in the record warranting additional medical records or a need for clarification of the medical evidence in the record. Therefore, substantial evidence supports the ALJ's decision not to recontact medical sources or obtain a consultative examination.

As noted by the ALJ,

> Dr. Ahmed Sewielam limited the claimant to lifting less than 15 pounds and he was to avoid excessive bending and stooping (Exhibit 11F, page 10). Dr. Arthur Primeaux limited the claimant to lifting up to 10 pounds with occasional climbing, twisting, bending, stooping and reaching above shoulder level in August 2006 (Exhibit 11F, page 6). Both exhibits were reviewed by the medical expert, Dr. Anigbogu, who stated that he disagreed with the assessments as based on all the evidence the claimant could perform light work. *Further, neither exhibit was proven by any objective testing and in fact there is testing to the contrary.*

(R.17)(Emphasis added). This contrary evidence supports the ALJ's finding that Hardy did not suffer from neurological deficits and, in fact, possessed normal motor strength.[2] This contrary evidence included a physical examination revealing motor strength of 5/5 in all extremities and normal sensory and reflex in his upper extremities and an MRI of the lumbar and thoracic spine which showed only mild degenerative changes. Additionally, he noted Hardy's improvement of 50% after undergoing a series of epidural steroid injections in 2007 and the fact Hardy was pleased with the results. (R. 17).

In addition to the medical evidence referred to by the ALJ,

---

[2] With respect to the Appeals Council's order that the ALJ evaluate Dr. Giray's assessment, specifically, his statement that Hardy's use of a cane with difficulty, the AlJ's failure to mention it specifically was harmless error. The ALJ considered both the physical and mental assessments in his decision and provided reasons for rejecting both. Additionally, a review of the record as a whole shows that the medical evidence relied upon by the ALJ undermined the treating physicians' assessments and substantially supported the opinion of the ALJ.

8

the record contains evidence of other examinations which do not support the limitations set forth by Drs. Sewielam and Primeaux. The follow up examinations on May 26, 2005 and July 26, 2005 indicate Hardy complained of a 5/5 pain but the physical examinations revealed he was "not in acute distress", his gait is "with normal swing and stance", his motor strength is 5/5 in upper and lower extremities in May and 5/5 in lower extremities bilaterally in July. (R. 272, 276).

With respect to Hardy's claims that the ALJ failed to follow the Appeals Council's order to address Dr. Giray's comment in his mental RFC assessment that Hardy ambulated with a cane difficulty and comment on the GAF scores in the range of 40 to 45 as assigned by Dr. Giray, the undersigned finds that any error in failing to address these matters amounts to nothing more than harmless error. The medical evidence as a whole does not support Dr. Giray's comment as to Hardy's physical condition. Additionally, as previously noted, the ALJ advised that he did consider all of the evidence and a GAF score is simply a subjective determination that represents the clinician's judgment of the individual's overall level of functioning.

Finally, with respect to the ALJ's RFC, he found Hardy had:

> [t]he residual functional capacity to perform light work lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, sit, stand and/or walk at least 6 hours in an 8-hour workday. No bending, kneeling and climbing of ladders and scaffolds. Limited stooping, twisting and crouching. No work at unprotected heights

or hazards. He should work at a flexible pace. (R. 16). In support of his decision, he noted the medical evidence listed above and ultimately concluded that "objective clinical and diagnostic findings do not support the claimant's alleged symptoms of functional limitations" as he shows "no neurological deficits, no significant orthopedic abnormalities, no serious dysfunction of bodily organs, and no marked or extreme mental limitations." (R. 18). After a thorough review of the record, the undersigned finds that substantial evidence supports the ALJ's findings with respect to the weight given to the treating physician's assessments as well as the ALJ's determination that Hardy is capable of light work activity.

## Conclusion

Accordingly, based on the foregoing discussion, IT IS RECOMMENDED that Hardy's appeal be DENIED and that the final decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered

by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 7th day of August, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE